BOARD OF TRUSTEES OF THE UNITED FOOD
AND COMMERCIAL WORKERS UNIONS AND
EMPLOYERS PENSION PLAN,

        Plaintiff,

                                Case No. 25-cv-1291-bhl

   v.

PENSION BENEFIT GUARANTY CORPORATION,

        Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD

On August 27, 2025, Plaintiff Board of Trustees of the United Food and Commercial Workers Unions and Employers Pension Plan filed this lawsuit against Defendant Pension Benefit Guaranty Corporation, claiming that Defendant erroneously denied its application for special financial assistance in violation of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1432, and the Administrative Procedure Act, 5 U.S.C. §706(2). (ECF No. 1.) On December 8, 2025, after receiving input from the parties, the Court set a schedule for the production of the administrative record and for the filing of any motions challenging the record. (ECF No. 16.) Consistent with the Scheduling Order, Defendant completed its production of the final administrative record on January 20, 2026. (ECF No. 17.) Plaintiff now challenges the production as incomplete and asks the Court to order Defendant to include two additional sets of documents: (1) internal documents concerning Defendant's position that the application was denied because the plan needed to meet one of the four "Critical Status Entry Tests" in the plan year 2020 to qualify for special financial assistance; and (2) a letter and attachments sent from Plaintiff to Defendant after Defendant denied the application. (ECF No. 20 at 2–3.) For the reasons explained below, the motion will be granted in part and denied in part.

## BACKGROUND

Defendant is a wholly-owned United States government corporation that administers and enforces Title IV of ERISA, including a mandatory government pension insurance program for multiemployer defined benefit pension plans. (ECF No. 1 ¶9.) The United Food and Commercial Workers Unions and Employers Pension Plan (the "Plan") is a multiemployer defined benefit pension plan established in 1963 that provides retirement benefits to over 15,000 participants. (*Id.* ¶10.) Plaintiff manages the operation and administration of the Plan. (*Id.* ¶11.)

In 2009, the Plan entered critical status under 29 U.S.C. §1085(b) and remained there through 2020. (*Id.* ¶¶17, 32–33.) In 2018, the Plan entered critical and declining status and remained there in plan years 2019 and 2020. (*Id.* ¶¶34–35.) On October 23, 2023, the Plan applied for $74.4 million in special financial assistance based upon its certification that it was in critical and declining status in plan year 2020. (*Id.* ¶36.) Defendant advised that the application would be denied because it did not meet one of the Critical Status Entry Tests in plan year 2020. (*Id.* ¶37.) Defendant and the Plan continued to discuss and work on the Plan's eligibility, and, on January 17, 2025, after instituting various changes to cause the Plan to meet one of the Critical Status Entry Tests in plan year 2020, the Plan submitted a revised application for $54.3 million in special financial assistance. (*Id.* ¶¶21, 38, 40–44.)

On May 16, 2025, Defendant denied the Plan's application, because it determined the Plan was not in critical and declining status in plan year 2020. (*Id.* ¶¶45–48.) Plaintiff challenges the denial of its application.

## LEGAL STANDARD

In reviewing an agency's decision, the APA instructs courts to "review the whole record or those parts of it cited by a party." 5 U.S.C. §706; *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (judicial review must be "based on the full administrative record" before the agency), *abrogated on other grounds, Califano v. Sanders*, 430 U.S. 99, 104–05 (1977). "The complete administrative record consists of all documents and materials directly or indirectly considered by the agency." *Miami Nation of Indians of Ind. v. Babbitt*, 979 F.Supp. 771, 775 (N.D. Ind. 1996) (quoting *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993)). The whole record means "the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

The agency is responsible for compiling the administrative record, and there is a strong presumption that the administrative record as furnished by the agency is complete. *Univ. of Colo. Health at Mem'l Hosp. v. Burwell*, 151 F.Supp.3d 1, 12–13 (D.D.C. 2015). Accordingly, in preparing the administrative record, an agency should "collect those materials 'that were compiled by the agency that were before the agency at the time the decision was made'" and ensure that the record "contains 'neither more nor less' information than was before the agency." *Fund for Animals v. Williams*, 391 F.Supp.2d 191, 196 (D.D.C. 2005) (citations omitted).

An agency's determination of the contents of the record is subject to judicial review. *See Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 444–45 (9th Cir. 2024). To overcome the presumption that the record produced by the agency is complete, Plaintiff must identify "reasonable, non-speculative grounds for its belief that the documents" it seeks to add to the administrative record "were considered by the agency and not included in the record." *Burwell*, 151 F.Supp.3d at 13 (deemphasized) (internal citations omitted).

## ANALYSIS

Plaintiff argues the administrative record that Defendant produced is incomplete. (ECF Nos. 19 & 20.) It asks the Court to order Defendant to include two additional sets of documents. For the reasons stated below, Plaintiff's motion will be granted in part and denied in part.

**I.      Defendant Must Produce Existing, Unprivileged Internal Documents Explaining Why the Plan Did Not Meet Critical Status Entry Tests for Plan Year 2020.**

Plaintiff explains that Defendant denied the Plan's initial application because it did not meet any of the Critical Status Entry Tests for plan year 2020, but that no documents (minutes, notes, e-mails, or other memoranda) concerning this position were produced in the administrative record. (ECF No. 20 at 6–9.) Plaintiff has requested all such documents. Defendant labels the request "speculative" and argues it should not have to respond because Plaintiff has not "specifically identified" any internal responsive documents that have not been produced. (ECF No. 22 at 6–7.) In the alternative, Defendant argues that the requested records are shielded from production because they reflect its legal position rather than factual records supporting its decision. (*Id.* at 8–9.) Defendant also maintains that the requested documents are subject to the deliberative process privilege. (*Id.* at 9–10.) In reply, Plaintiff insists that it seeks only decisional, non-privileged documents about Defendant's determination that the Plan's application should be denied. (ECF No. 24 at 1–3.)

The Court will order Defendant to produce any non-privileged decisional documents in its possession explaining why the Plan did not meet Critical Status Entry Tests for plan year 2020. To the extent these are documents and materials that Defendant "directly or indirectly considered," they must be produced. *See Miami Nation of Indians of Ind.*, 979 F.Supp. at 775. As Plaintiff explains, Defendant admits that its staff communicated the position that the Plan did not meet Critical Status Entry Tests in plan year 2020. (ECF No. 13 ¶37.) Defendant does not maintain that no such documents exist but rather unreasonably insists Plaintiff cannot request them unless it can identify a specific responsive document. (*See* ECF No. 22 at 6–10.) This would place an impossible burden on Plaintiff. Plaintiff cannot know of the specific internal documents in Defendant's possession until they are produced. Plaintiff has adequately described the requested materials and has even given Defendant examples of the types of documents it seeks—minutes, notes, memoranda, and e-mails. Defendant's admission that communication existed, coupled with its failure to produce any documents supporting its position, are sufficient to overcome the presumption that the administrative record is complete. *See Burwell*, 151 F.Supp.3d at 12–13. Defendant need not, however, produce privileged materials. Accordingly, if there are unprivileged decisional documents explaining why the Plan did not meet Critical Status Entry Tests for plan year 2020, they must be produced.

## II.     Defendant Need Not Produce the Letter and Attachment Plaintiff Sent After the Application Was Denied.

Plaintiff also asks that Defendant produces a letter sent to Defendant in June 2025, approximately a month after Defendant denied the application. (ECF No. 20 at 8–9.) Defendant responds that the letter's timing confirms it was not part of the materials on which the decision was based and therefore cannot be part of the administrative record. (ECF No. 22 at 4–6.) This logic is seemingly sound.

Plaintiff nonetheless cites a prior decision from this Court in which it ordered that the administrative record be supplemented with documents sent to an administrative agency after the deadline for submissions but before the relevant agency made its final decision. (ECF No. 20 at 8–9 (citing *Milwaukee Inner City Congregations Allied for Hope v. Dep't of Transp.*, No. 24-cv-1043-bhl, 2026 WL 221810, at *3–4 (E.D. Wis. Jan. 28, 2026)).) Plaintiff argues that, because the letter at issue here was sent before it commenced this lawsuit, Defendant should include the

letter in the administrative record. (ECF No. 24 at 3–4.) Plaintiff ignores a major distinction between the timing of the letter at issue here and the correspondence at issue in the earlier case.

The administrative record must include materials "that were before the agency *at the time the decision was made*." *See Williams*, 391 F.Supp.2d at 196 (emphasis added). There is no dispute that the letter at issue here was not in Defendant's possession when the challenged decision was made. The letter came after that decision. That it was sent before this litigation started does not make it a proper part of the administrative record. Accordingly, *Milwaukee Inner City Congregations Allied for Hope* is distinguishable. Because the letter at issue was sent *after* the decision was made, Defendant could not have directly or indirectly considered it at the time of denial. *See Miami Nation of Indians of Ind.*, 979 F.Supp. at 775. Plaintiff has not overcome the "strong presumption" that the administrative record is complete on this issue, and this portion of its request will therefore be denied. *See Burwell*, 151 F.Supp.3d at 12–13.

## CONCLUSION

Plaintiff's motion to supplement will be granted in part and denied in part. Within 14 days of this Order, the parties must meet-and-confer and propose a schedule for the supplementation of the record and for merits briefing.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant must produce all existing, nonprivileged internal decisional documents explaining why the Plan did not meet Critical Status Entry Tests for plan year 2020.

**IT IS FURTHER ORDERED** that, on or before **June 4, 2026**, the parties must meet-and-confer, then submit a joint status report proposing a schedule for the supplementation of the record and for merits briefing.

Dated at Milwaukee, Wisconsin on May 21, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge